Get right to it. Our first case this morning is No. 24-12360, Arenales et al. v. Director, U.S. Citizenship & Immigration Services. Mr. Prada? Good morning, and may it please the Court. In Kanapuram, the Court stated that, citing Thakurapati, that even when a decision is committed to agency's discretion, the Court may consider allegations that an agency failed to follow certain regulations. That's what we're doing here. According to the Ombudsman Report, which is attached at 22-3, Docket Entry, the agency exercises parole discretion in the rulemaking process. That's at page five of the Ombudsman Report. We are not asking to review a parole decision on the merits. We are saying that this regulation requires a certain outcome after a preceding determination has been made. That determination is the waitlist determination on whether the person has an approvable U visa petition. That's when they do a case-by-case analysis of the person's application, determine if they've met basically everything that would result in approval, but for the annual cap. Can I ask you a different jurisdictional question? Sure. I want to ask you about standing. Tell me what you believe the injury is here for. I'm going to do it by group, so we'll do a group in United States plaintiffs and out of United States plaintiffs. Starting with group one in United States plaintiffs, what is the injury for them? They would like to leave the country to see their family. For example, someone's grandmother passed away recently. The Supreme Court has certainly said that the right to travel and to see family is a potential injury or could be an injury. There also is a requirement, as I read standing law for future injuries, for imminency. In other words, there needs to be an imminent injury. I've read the complaint. Again, I'm only talking about the first group. For the in-country plaintiffs, can you point me to the best allegation you have in the complaint, which is really all we have right now, for the imminency prong of standing? There's no way that they can even apply for this permission to travel. I guess maybe the question is, when do they intend to travel? They would intend to travel the moment they have a document. I appreciate you telling me that, and that may in fact be true, but where is that in the complaint? I'm not sure I see. If in the complaint it said what you just said, I think that probably may be enough, but I'm not sure I see that. Can you point me to an allegation? If you can't at the moment, that's fine. You come up and rebuttal and let me know that's okay too. Yes, I would need to review it again to make sure. Let me just close the loop. For the out-of-country plaintiffs, is it the same thing that they desire to travel into the United States to see family and others and not able to? Yes, exactly, to reunite with their family that's here. Do you know of any allegation for the imminency part of standing with regard to that group, the out-of-country group that wants to travel into the United States? We did not submit any declarations, but I have to double-check, but that's been the thrust of the whole case. That's what we're asking for. Even if it's just in the prayer for relief, that we're asking for the ability to come in and unite with their family and to be able to see their family that they haven't seen in many years. I think these petitions are pending now seven years. It could be much longer. I don't know when those numbers would be available. I think they become available every October, but based on the statistics, it seems it's going to be another seven years, roughly. If I could fast-forward a little bit to the merits here. As I understand your claim for what I'll call the second bucket of plaintiffs, the out-of-country plaintiffs that are coming in here, what I understand is, at least as the case stands now, they have been granted what you term to be conditional parole, but they've been granted some form of parole. And the argument you were making to us is, based on the allegations of the complaint, that they now, as a matter of law, under I think it's 212.5F, are now entitled to what I think is called advanced parole, which would allow them to get their travel documents to come to the U.S., right? The advanced parole would be for the people who are in the United States. I think you were asking about the ones abroad? I am. Yeah, the ones abroad. They were given this conditional parole document during the litigation, but it expired within 30 days. On the second page of that document, I think it's 22-6 or 22-8. That's 22-6 of the docket entry. On the second page, it says you must travel to the United States within 30 days. For people who have lived abroad, who have businesses and homes and property, that's just unrealistic. And the regulation requires parole while they are on the waiting list, not for a subset of that time. They're still on the waiting list. Unfortunately, they were not able to come in time. Because I understand what the allegations are. The allegations of the complaint are that those who are living out of the country have received some sort of conditional parole and have said, hey, at some close period of time, you have to go to the Department of State, get some biometrics, and you will be eligible for travel documents in order to come here, right? That was not in the complaint. That was given after the lawsuit was filed. So that arose during the case. Was there a subset of plaintiffs in the complaint that, in fact, already had that conditional parole? No. No, none. I have never seen USCIS give that to anybody without filing litigation. We filed individual cases in the Southern District of Florida before. Fortunately, that client was able to do everything in 30 days. But in this situation, I think that's an attempt from the government to moot out the case. So what's the illegality with regard? I'll just stick to the out-of-country plaintiffs for now. So if they were granted a parole and they were given permission to travel, although you have to do it within a certain amount of time, what are you saying has been violated? Well, they haven't been given parole yet. Parole is when you're coming into the country and they allow you to be here at liberty. So let's say someone does not have a visa to be here. The options for the government are to detain you, deport you, or parole you to allow you to be here. Right. So as I understand it, for the out-of-country plaintiffs, they're on the wait list. They've said, OK, you've got to go through the Department of State and get the biometrics done. But once you do that, you're going to be able to travel, right? Isn't that the state of the record as it stands right now? Well, we've asked for an extension on the 30 days, and we were never given it. What's the end? As the complaint has been alleged, and I get facts have changed and that may have some implications for your clients, but as alleged in the complaint, what is the violation? They still have not been paroled. The conditional parole, first of all, that's not contemplated in the regulation at all. The regulation says will be paroled, and parole only happens when you're seeking to enter. Right. But they're not seeking. So if they haven't entered yet. Then how is this right? In other words, what if they have no if, as alleged, they have no intention of traveling right this second and they haven't actually gone to an airport and said, OK, I'm on the wait list. I'm here. I want to be paroled. And no call has been made. What how what's the illegality? The scheme in place is that they should be able to parole into the country while they are on the waiting list. There's no it has to be right now or within 30 days. They cannot board an airplane without some sort of travel document. Right. But haven't they been told, as I understand the record, haven't they been told you have to go to the Department of State and once you pass the biometrics and as long as there is something doesn't come up, I think is the way it's sort of said. I assume that means like we learn about a criminal record or something like that. As long as nothing comes up or you're not who you say you are, you're going to get your travel documents. You will get travel authorization, I believe, is what exactly it says. Right. So the problem would be that it was limited to 30 days and they would not give us any extensions. We have been trying to get an extension. That's the issue. It's the extension issue. If they were to say come when you're ready while you are on the list and do it this way, we wouldn't be complaining. Okay. So let's now talk about the in-country bucket. So for those, as I understand it, there's two options to be given deferred action or parole. They've been given deferred action and that does not trigger, at least as argued by the government, that does not trigger the obligation under 212.5F for advanced parole, right? That's the issue? When you are here and you're staying here and your body's here, they have the choice. We're not debating that they should have both deferred action and parole at the same time. But the way the structure of this regulation and the whole system for UB's works is that you can leave. It will not affect your waitlist status. So they can leave today. They will not be able to come back. And then their jobs, their businesses, their homes are going to be left unattended. I understand. But where is the violation? So I'm talking about the merits now. Where is the entitlement for the ability that you're talking about where they've been granted deferred action? So it's the two steps, right? So the outcome for the abroad plaintiffs, if we're correct on that... I'm talking about abroad. So please focus on the bucket. No, I understand. But the argument we're making is the basic premise, right? While you are abroad, you can come back in with parole. There is nothing that prohibits them to leave. So if they leave, based on our basic premise, they should be allowed to come back with parole. If they've only been given, if they haven't been given parole, if they've only been given deferred action, and that does not come as a matter of regulatory right with advanced parole, then they know if they leave that that's the state of where they're in. I mean, I guess what I'm saying is as they sit today, not as they sit in a hypothetical if it happens down the road, but as they sit today, where is the statutory violation or the regulatory violation? They want, as you were asking for standing, they want to leave. They want to travel. Not that I'm not standing now. I'm in the merits. Well, if they are here and they stay here and they have no intent to travel, then yes, there's no problem. But they do have an intent to travel. So there are pre-existing regulations that you can apply for that permission before you leave. That's the only basis in the regulations. You have a permission implies discretion, and that gets to the jurisdictional problem. That's not a statute. Your point is they have a statutory right to something or a regulatory right to something and have been denied it. And I agree with you, jurisdictionally, that gets you over the hump. My question is where on the merits is the jurisdictional, is the merits requirement that somebody who is here, who's been given deferred action under the program, be then given something else? So it comes from the temporal scope of the U visa regulation. You will be granted deferred action or parole while the person is on the waiting list. So they're still on the waiting list, right? And it has to be one or the other. They've been given deferred action. Yes, but once they depart, then they have nothing because deferred action... No, they still have deferred action. They just don't have the ability to come back, right? Deferred action cannot be granted when you're... It can only be granted while you're here. Right, but the statute talks about a specific grant. Once there has been a grant, and we know there has been, it's not that you get granted three or four times afterwards. You get one grant. You get either lane A or lane B. We've given you lane A. You don't get, well, I went and violated the conditions of my deferred action, and now I want another lane, right? That's not the way it works. In isolation, I would agree with that. But the whole regulation has this temporal scope to it that broadens it. You will have one or the other while you're on the list. So if the facts change where you end up losing deferred action or parole, right? There might be a situation where someone has parole and loses it. It should transfer to the other. And if I can continue answering... In other cases where we have litigated individual plaintiffs who are paroled in, the moment they come in, DHS cancels their parole and gives them deferred action work permits. So they have done the switch between one to the other. Let me just make sure that I understand how this works. So for the in-country plaintiffs, they're here and they have deferred action. What is the mechanism for them to request being able to leave and be paroled back in? They should be able to use the Advanced Parole Regulation 212.5F. We believe when you read that in conjunction with the U-Visa waitlist regulation that it should be available, but it's not. And in the... When you say it's not, have they applied for advanced parole and been denied it? The instructions don't allow for it. The instructions say it's for people who are granted U-Visa status. The ones who have sat through the whole visa cap for the seven, eight years or whatever it takes. When you have a pending application, that's not contemplated by the regulations. In their brief, they mention, well, there's a box for other on the form. But they have always treated that as a raw discretionary request for parole under the statute, but not like a request to invoke the waitlist regulation. In the declaration that we attach in the addendum to the reply brief from a government USCIS employee, they said that their policy is not to grant these requests. Not based on the fact that they're... How does the government know when someone's planning to depart, when one of these plaintiffs is planning to depart and wants advanced parole? If they would allow us to file the advanced parole form, that's when they would find out, right? So for people who have TPS or Deferred Action for Childhood Dreamers, and they want to depart, the form instructions allow them to. There's a box for their situation. They just file it. And then you wait out the decision, and once it's approved, they give you a document that says you can use it within a year. So we're not asking for an advanced parole document that's limitless, but within the normal course of what they do in other situations. Thank you. We'll give you your full three minutes back for rebuttal. Good morning. It may please the court. Anissa Ahmed on behalf of the federal government. Your Honor. By asking you something that we ended with. Would domestic applicants who have been granted Deferred Action have to reapply for a U-Visa if they left the United States without first obtaining advanced parole? What's your position on that? No, U-Visa applicants can wait out the pendency of their adjudication abroad. And I wanted to touch on some of the issues that were raised in your colloquy with my friend on the other side, if I could. First, just discussing about whether or not domestic appellants can leave the United States, and what mechanisms exist for them to do so. Can you back up and start with standing? Sure. So you've read the complaint, right? Yes. Can you point to me what you believe to be an allegation of imminency with regard to travel? I can. I am going to travel as soon as I get my document. I am going to do it within a month of me getting my document. I'm going to do it on my next treatment, or my sister's wedding is planned for this date, and I plan on traveling on that date. I cannot. Is that a problem? It is for standing. As Your Honor mentioned earlier, that there is an imminency requirement for there to be standing. And here, plaintiffs have alleged potential future harm where they want to travel. I think an illustration is probably helpful here. The crux of what plaintiffs, I'm sorry, excuse me, appellants really want is the ability to travel inside and outside of the United States whenever they want. However, that is an immigration benefit that is conferred generally to U.S. citizens by way of a passport. And in general, and largely for those who have LPR status. So if you have, sorry, lawful permanent residency, if you have that status, if you travel for over a year, you do have to seek reentry documents. So the ability to travel inside and outside of the United States on sort of this rolling basis is limited to U.S. citizens. And I think that's helpful here to illustrate sort of what the difference, I guess, of what plaintiffs believe they're entitled to, what they believe they're entitled to, and what they actually are entitled to. No, I was gonna ask, so Mr. Prada said there's no mechanism for them to request parole in their situation with deferred status. What's your response to that? That's incorrect. Domestic appellants, while they have deferred action, are able to request advanced parole documents. They can do so by a form I-131, which is entitled an application for travel documents, parole documents, and arrival slash departure records. And in that form itself, and I have it in front of me, and to the extent the court would like any sort of briefing or a copy of this, the government will, of course, provide that after this argument. But I'm looking at part one, which says application type. And yes, there are a series of boxes to check. The last is M, which is other, which states that you can write why you want, if you don't fall into any of the enumerated categories, there's a catch-all, which is box M, which states that you can seek advanced parole and you can lay out your reasons why and plead your case. They have, to my understanding, and appellants have not pleaded any facts to say that they have done so and have been denied. There's no right to, this case, I thought, was about whether there is a regulatory right that stems from a specific status for whether you're entitled to be able to leave or not. The case doesn't seem to be about whether they should or shouldn't, or the mechanism to do so. The case is saying, as I understand it, they're alleging that because of my status, I am entitled as a matter of law to this and you have denied me that thing. But as I understand it, if the choice in the regulations is deferred action or parole, the government here, for whatever reason, has decided for the domestic plaintiffs to give them deferred action, that under 212.5F, there is no right to advanced parole at that point, correct? That's correct. What more is there to this case? Honestly, can you tell me what more there is in this case? What am I missing here? I don't believe you're missing anything, Your Honor. I think that's it, is that in 8 CFR 214.14D2, USCIS has a choice. It can either grant deferred action or it can grant parole. The choice is binary. And USCIS here has decided to grant deferred action for the domestic appellants. And because deferred action can only be granted as a matter of practicality to persons within the United States because it is a lower prioritization for removal from the United States, so you don't need to worry about being removed from the United States if you're outside of the United States, it gave deferred action, it granted deferred action to the domestic appellants. So your opposing counsel says that the way that this regulation is written, it means that if they leave, despite the fact that they're not allowed to and they don't have permission to, and they leave, at that point, a choice has to be made. And then the choice can only be made for parole and not deferred action, because someone abroad can't get deferred action for the reasons you've just explained. That's as I understand their argument, right? So I think, yes, I believe that is their argument is that once they leave the United States, but under 8 CFR 214.14d2, USCIS only has to make a decision between deferred action or parole once. It's not a rolling decision based on the decisions that appellants make to leave the United States. That is a calculated decision that the appellants must make based on their own circumstances. But USCIS is not obligated to make a rolling determination or multiple determinations for each applicant. And that's really what seems to be what the legal case is about. In other words, does the regulation mean that you get to make the decision over and over and over again, depending on any circumstances at any given time? That's correct. And that goes back. Sorry, or that it's a one-time call. In other words, they have to make a call. We will decide this thing. It is either one or the other. A decision has been made and that's it, right? I mean, that's what this case seems to rise and fall on, at least with regard to the domestic plaintiffs, right? That's correct. Okay. On the legal side? On the legal side, yes. Okay. Now on the foreign plaintiffs, those outside of the United States, that's what I mean by that. For those folks, I'm not even sure what it rises and falls on. Because as I understand it, they were given parole. It's called conditional parole by some folks here. Parole. And they were told, all you got to do is go to your local Department of State, your local embassy or other Department of State facility, get biometrics done. And as long as it doesn't come up that you're some sort of grand criminal or not who you say you are, you will be given a travel authorization, correct? That's correct. And that's the state of things, right? That is the state of things, yes. Tell me what he's saying, what your opposing counsel is saying regarding the 30 days. He's saying that you only have 30 days to make that call or to do that? Oh, so that 30 day temporal condition was not brought up in the briefing. And so-  Ever. No, not ever. And so to the extent that there is, I think if they're assuming that they are reading that correctly and saying that there's a 30 day window, I mean, that's about a par for many immigration benefits oftentimes. And any government benefit, really. You have a time by which these documents and benefits expire, right? We have a certain window of time where you need to go and fill out. I mean, if your license expires, you have a certain amount of time where you need to go and, you know, renew your license before, you know, you're out of luck. And so this is something that this is the same thing is that you have 30 days to avail yourself of the Department of State processes in order to get the travel documents and then go and then come to the United States at a port of entry and plead your case to Customs and Border Protection. Going back to the complaint, how does that framework even fit into the allegations of the complaint? In other words, this was on a motion to dismiss on a particular complaint on a state of facts as it existed at a particular time.  What allegation in the complaint of illegality goes to this issue we're talking about right now? This temporal issue? I cannot point to one. I don't believe it does fall within any of the claims because it doesn't fall into any of the withholding of any sort of parole, which is what their claims primarily are. Broadly speaking, it's unreasonable delay and withholding of parole. But so the overseas appellants have at this point, as the facts are now on the ground, have all received conditional parole. And at the time the district court rendered this decision, two of the eight overseas plaintiffs at that point, but appellants, had received weightless determinations and conditional parole. And USAIS was in the process of going through that administrative process and adjudication for the other remaining. And now they all have. Now they all have it. Yes. Yeah, the parties are USAIS brought all of the overseas appellants and all domestic appellants into parity with each other for the purposes of this. Is the government's position that that means that the claim, this lawsuit fails as a matter of law because there is no illegality, or does that mean this case is moot because they've received all the relief that they're entitled to? We did argue mootness before the district court, and we would renew that now orally. Of course, we did not make that. We made a different subject matter jurisdiction argument under 1252 H-E-B-2. But yes, it is moot. But we responded to the complaint as, I'm sorry, to the complaint. And then of course, to appellants opening papers as they existed. So we would still say, so yes, it is moot. And of course, and for the failure to state a claim as a matter of law, we would say 8 CFR 214.14 D-2 gives USCIS a discretionary choice. And USCIS picked that choice. They aren't alleging that they never received deferred action. They're just saying that they are entitled to parole as well as deferred action. But that would take away USCIS's option in 214.14 D-2. And as well, demanding parole would also take away the discretionary nature of that decision that's set forth in 8 CFR 82, sorry, 1182 D-5A. Yes, sorry. Let me just switch a little bit with respect to judicial review. Are you under the APA, are you relying on 701 A-1 or A-2 or both? Both. Yes. If I can go back to the jurisdictional point, I have to say your opposing counsel makes a point. And that is that we have seemed to have drawn a line in our case law, whether correct or not, but we've drawn the line between attacks or relief that is sought for a discretionary call and attacks on the legality or illegality of following the regulations or process that is set out by the regulations. You agree that we've set out that distinction? Yes. It seems to me that at least some of the allegations, not all, but at least some of the allegations do indicate that there was a violation of the regulations. Now, whether on the merits that in fact is the case seems to be separate from that, and maybe it's not, and maybe that's part of my question, but do you agree with me at least that as alleged that it is alleged that USCIS violated its own regulations in how it processed these things? So I would disagree a little bit. And the reason why is because, and to quote the Fifth Circuit in Flores versus Garland, that there shouldn't be a magic words test when it comes to these types of determinations, whether there's judicial review over discretionary decisions. And here plaintiffs, I'm sorry, excuse me, appellants can dress up their claims however they want, but at bottom, at its core, what their issue is, is that USCIS did not give them parole when they believe they are entitled to do so. And this gets to really what the heart of my question is. That seems to be a merits call. In other words, I think you may be right on the merits when you dig into it, but for the jurisdictional hoop, do we go to the merits and then decide we don't have jurisdiction? Or do we decide we have jurisdiction and then go to the merits? So I think in any case, you would have to decide if you have jurisdiction and then go to the merits. And I understand in this case, it's a little bit complicated because I think it's kind of firearm that did say it has a carve out that does say that we shouldn't allow, there is judicial review if there are allegations that USCIS, or that in this case, USCIS didn't follow its own regulations. But just to be clear, looking at the way 8 CFR 214.14 D2 appears in the text, just a textual analysis. Plaintiffs, excuse me, appellants are not alleging that they never received deferred action. They are saying that they received parole. And so therefore- I know, but this gets to, so let me just read to you the allegations, at least in the relief side of things. The services, quote, violate section 212.5 F and 214.14 D2 that require the agency to provide waiting list parole to U visa applicants when they are placed on the waiting list and that the denials commit legal error by considering waitlist parole as discretionary, though it is mandatory under sections 214.14 D2 and 2112.5 F. If I am to take the truth of those allegations for purposes of jurisdictional analysis, that seems to be what we've carved out in Cana Purim, which is, quote, that a court may consider allegations that an agency failed to follow its own binding regulations and that were USCIS to violate its own binding regulations in the processing of these applications, those actions might be reviewable. Sure, and again, I would say that the issue here is not whether or not they follow the regulation. I do understand that the text of the complaint, the allegations do state that they are challenging whether the agency followed 8 CFR 214.14 D2. But I would say that the core, the crux of their complaint really is that they are entitled to parole and all parole stems from 8 CFR, I'm sorry, 8 USC 1182 D5A, which states explicitly that the decision to grant or deny parole is entirely within the second. There's no doubt about that, but once the agency under that statute says, if someone gets this, they will also get this. Yes. And they're saying that you violated that, you, not you personally, but the agency violated that. That does seem to be at that point, not just about the discretion, but about following the law as USCIS laid it out. And if they had properly alleged that they were entitled to both and didn't receive the documents as set forth in 8 CFR 215 F5, I'm sorry, 5 F, then perhaps that would be the case here and 1252 HUB 2 wouldn't apply. I just don't know what to make of Kenna Perham's discussion that a court may consider allegations that an agency failed to follow its binding regulations at the jurisdictional stage and then decided the merits that having considered those allegations, they're ultimately wrong. Those seem to be different things. And I apologize for going over. So if I may continue. So I don't disagree that that is a little bit of like, it does muddy the waters a little bit, but I think it's helpful to look at the context of Kenna Perham. So there the appellants were beneficiaries of I-140 employment benefits. And there they weren't given the proper opportunity to rebut certain evidence against them. And I think the court there was concerned that there wouldn't be any jurisdiction to review when USCIS improperly denies someone of basically those due process rights that are set forth in the CFR as individual rights. But there is nothing outside of 8 CFR 214.14 D2 that sets forth the processes for people that USCIS needs to follow in order to award parole. It just says that parole is an option. I see my time is up. If I may briefly conclude. Briefly. For these reasons discussed today and that in the briefing, we ask that the court affirm the district court. Thank you. Rebuttal. Thank you. Oh, I'm sorry. Judge Luck, going to one of your questions on page 35 of the government's brief on the bottom paragraph. It states that non-citizens cannot actually be paroled into the United States until they arrive at a port of entry and are inspected and paroled by CBP. So the conditional parole by their own admission is not the parole. It's just a step towards it. And our case is based on the while they are on the waiting list language. We believe that broadens the effect of this regulation because if they were to grant deferred action for 30 days and then it ran out and said, well, we gave it to you for 30 days, you were given it, that would violate the regulation because they're supposed to have the deferred action while they're on the waiting list, which could be for several years. And the purpose behind this regulation was to protect these people during the long waits. Unfortunately, the 10,000 visa cap has been hit continuously for decades. Moving on to your question about standing in the complaint on page 28 of the complaint, paragraph 149, and this is repeated for all the plaintiffs, states that Bruna and her family have suffered significantly from not being able to travel internationally because her grandmother died of cancer in recent years and neither she nor her family were able to visit her before her death or attend the funeral. Now her 84-year-old grandfather has cancer as well and she is unable to travel to visit him. This hinders her recovery and causes further trauma. So that's the best allegation, you think? Yes, and it's repeated throughout. And so we may not have said- It can't be repeated throughout. I mean, different plaintiffs have different situations. But we use the same language for each of them, that basically they would like to for the purpose of family members, specific ones for each, but that they have been suffering from being unable to see their family and that it would help their trauma and recovery. We're not able to give a specific date until there's actually a parole document in hand. You can't schedule that, right? So the I-131 application, which now has an other box on the form, that was a creation by amendment to the form last year in April. So that has changed since we filed the complaint. So at the time we filed the complaint, there was no way to request advanced parole with that form, but for the boxes that are on there. Now in their own documents that we submit in our addendums and in the attachments, they were explaining, the ombudsman was explaining that there's like a 25% approval rate for people who ask for raw parole on discretion. So for example, if somebody wants to bring a family member to have a medical treatment, you can send a request to the humanitarian branch and they'll review it and they'll grant it or not. That, if I can continue, I just ran into the light. Yeah. You may finish. Yes, thank you. In those situations, that's raw discretionary parole. That's what they're saying is available. Of course, it's available to everybody. But what we're saying is that the regulation is something different. There was already a decision made during the rulemaking process that these people who have made a showing that their case is approvable, but for a number, they will be granted deferred action and parole. And our case hangs on the temporal scope and broadening effect of the language of why they are on the waiting list. Therefore, we ask the court to reverse and remand. Thank you. Thank you.